UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TAYARI JACKSON,                            :

                  Plaintiff,        :

        -against-            :

SERGEANT DAVID KAUFMAN, et al.,    :

               Defendants.   :
----------------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____          │
│ DATE FILED: 8/25/15               │
└──────────────────────────────────┘
```

No. 13cv6544 (PAC) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:**

In this action brought pursuant to 42 U.S.C. §1983, plaintiff Tayari Jackson ("Plaintiff")

seeks an award of $2,500,000 in damages from defendants Sergeant David Kaufman,

Corrections Officer Forrest Rivers, Corrections Officer Anthony Goetz, Corrections Officer

Clifford Gunset (together the "Corrections Officers"), and Dr. Robert Bentivegna ("Bentivegna")

(collectively, "Defendants"), for injuries Plaintiff allegedly sustained after an assault and battery

by the Corrections Officers and as a result of an alleged denial of proper medical treatment by

Bentivegna for those injuries.  Defendant Bentivegna now moves for partial summary judgment

in his favor, arguing that Plaintiff could not prevail at trial on a claim that the doctor violated

Plaintiff's Eighth Amendment rights, and arguing that, in any event, he is entitled to qualified

immunity on Plaintiff's claim against him.  (*See* Dkt. 50.)  For the reasons that follow,

I recommend that Bentivegna's motion be granted, and that Plaintiff's claim against him be

dismissed.

## BACKGROUND

### A.      Factual Background[1]

Underlying this case is Plaintiff's allegation that, on November 6, 2012, at around

11:40 a.m., while he was an inmate at the Green Haven Correctional Facility and was being

escorted to the facility's Special Housing Unit ("SHU"), he was assaulted by the Corrections

Officers.  (*See generally* Second Amended Complaint, dated July 16, 2014 ("2d Am. Compl.")

(Dkt. 37); *see also* Def. 56.1 Stmt. ¶ 1.)  The details of the alleged assault are not relevant,

however, to Plaintiff's claim against Bentivegna, which focuses on the medical care (or lack of

medical care) that Plaintiff received from him thereafter.  (*See* 2d Am. Compl., at II(D).)

At his deposition, Plaintiff testified that, when he arrived at the SHU, his leg was "as big

as a balloon" and that he "could barely walk."  (Declaration of Jason M. Clark, Esq., dated

Feb. 6, 2015 ("Clark Decl.") (Dkt. 52), Ex. F (Deposition of Tayari Jackson, taken Dec. 3, 2014

("Pl. Dep.") (Dkt. 52, at 21-31)), at 33:18-19.)  He also testified that, upon arrival at the SHU,

the staff who accompanied him to the SHU initially called for someone to come to photograph

his injuries, but then "call[ed] back to say forget it."  (*Id.* at 38:3-6.)  In any event, it is not

disputed that, upon his arrival at the SHU, Plaintiff was asked by a resident nurse, Andrew Miller

---

[1] The facts in this section are taken from the parties' statements pursuant to Local Civil Rule 56.1 (*see* Defendant's Statement Pursuant to Local Rule 56.1, dated Feb. 6, 2015 ("Def. 56.1 Stmt.") (Dkt. 53); Plaintiff's Counterstatement to the Defendant['s] Rule 56.1 Statement of Material Facts, undated ("Pl. 56.1 Stmt.") (Dkt. 68)), and the underlying evidence cited in those statements.  Where Plaintiff has not disputed a fact set forth by Bentivegna in his Rule 56.1 Statement, this Court cites to Bentivegna's statement only.  With respect to the underlying evidence, this Court notes that Bentivegna has only cited and attached to his motion a handful of documents and excerpts of Plaintiff's deposition testimony, and, with the exception of a printout from a webpage indicating that nurses "do not make medical diagnoses or prescribe medical treatments or drugs," Plaintiff has submitted no additional documents or testimony in opposition.  (*See* Declaration of Carlos Gonzalez, Esq., undated ("Gonzalez Decl.") (Dkt. 66).)

("Miller"), whether he needed any medical treatment, and Plaintiff responded that he did need treatment, for his leg. (Def. 56.1 Stmt. ¶¶ 2, 3; *see* Pl. Dep., at 33:21-22.)

An "SHU Entrance Exam Form," apparently completed by Nurse Miller upon Plaintiff's entry into the SHU, reflects, in a section calling for a description of any inmate injury, that Plaintiff specifically complained of pain to his right lateral thigh, but that he was observed to have no redness or contusion. (*See* Clark Decl., Ex. A ("S" Block SHU Entrance Exam Form, dated Nov. 6, 2012 ("SHU Entrance Exam") (Dkt. 52, at 5-6)), ¶ A(2).) This is echoed in a general "Comments" section at the end of the completed form. (*See id.* ¶ D (noting again Plaintiff's complaint of pain to his right lateral thigh, and indicating that no redness or swelling of the thigh was observed).) The handwritten notes included in this "Comments" section also appear to indicate that Plaintiff was observed in his underwear; that his head, torso, and four extremities were all "visualized"; and that no injuries were observed. (*See id*; *see also* Clark Decl., Ex. E (Ambulatory Health Record Progress Notes ("Progress Notes"), entry dated Nov. 6, 2012 (Dkt. 52, at 16)).[2]) To the extent, though, that Bentivegna seeks to rely on the SHU Entrance Exam as evidence that Plaintiff was not observed to have any injury at the time (*see* Def. 56.1 Stmt. ¶¶ 4-5), Plaintiff states that he "lacks sufficient information as to what Nurse Miller ascertained" (Pl. 56.1 Stmt. ¶¶ 4-5).[3]

---

[2] As Bentivegna has not introduced any declaration, affidavit, or deposition testimony by Miller to decipher his handwriting on the exam form or the Progress Notes, this Court has relied on its own best interpretation of the writing and the abbreviations contained therein.

[3] Plaintiff also challenges Nurse Miller's "ability to make any medical diagnosis," given the fact that he was a nurse, as opposed to a doctor. (*See* Pl. 56.1 Stmt. ¶ 4.) This contention is addressed in the discussion below.

3

The SHU Entrance Exam form appears to include a note for follow-up with an "SHU Rounds [doctor]"[4] (SHU Entrance Exam ¶ D), and, consistent with this, the parties agree that Bentivegna visited Plaintiff in his cell on the following day, November 7, 2012 (Def. 56.1 Stmt. ¶ 7).[5]  According to Plaintiff, when he was first escorted to his cell after the medical exam, he could not even "sit down because [he was] in too much pain."  (Pl. Dep., at 38:7-15.)  When Bentivegna visited him there the next morning, Plaintiff contends that he showed the doctor his leg, which he asserts was "swollen," and that he also complained that his back hurt.  (*Id*. at 38:25-39:13.)  Bentivegna gave Plaintiff a "muscular pain reliever" and ibuprofen.  (*Id*. at 41:9-10; *see also* Pl. 56.1 Stmt. ¶ 8 (Plaintiff admitting that he received analgesic balm and ibuprofen).)

Plaintiff was seen again for his injury two days later, on November 9, 2012, when he was examined by Nurse Charles Wolff for complaints of right thigh and shoulder pain.  (*See* Def. 56.1 Stmt. ¶ 11.[6])  At his deposition, Plaintiff testified that his leg "looked worse [on November 9th] than it did on November 6th," the date of his injury.  (Pl. Dep., at 42:20-23.)  Nonetheless,

---

[4] *See* n.2, *supra*.  Bentivegna asserts that the SHU Entrance Exam Form also "includes a notation that [P]laintiff [was] to be monitored and there should be follow up with a physician" (Def. 56.1 Stmt. ¶ 6), and Plaintiff "admits" this statement (Pl. 56.1 Stmt. ¶ 6).  Although the form itself does not actually use the word "monitor," the November 6 Progress Notes do appear to include a notation that Plaintiff should be monitored.

[5] At his deposition, Plaintiff testified that Bentivegna visited him on the morning after he arrived in the SHU.  (Pl. Dep., at 38:25-39:6.)  Upon being asked whether any medical staff had also visited him in his cell during his first evening there, Plaintiff testified that he could not recall, but that he did "think somebody came through at night."  (Pl. Dep. 38:18-24.)

[6] Bentivegna states in his Rule 56.1 Statement, and Plaintiff admits in his counterstatement, that this examination took place on November 19, 2012, rather than on November 9, 2012.  This Court, however, has reviewed the underlying evidence cited by Bentivegna, and that evidence reflects that the examination in fact took place on November 9, 2012.  (*See* Pl. Dep. 41:11-17; Clark Decl., Ex. C (Inmate Injury Report, dated Nov. 9, 2012 ("Injury Report") (Dkt. 52, at 10); Progress Notes, entry dated Nov. 9, 2012 (Dkt. 52, at 17).)

photographs that were taken of Plaintiff on November 9 (Def. 56.1 Stmt ¶ 14) do not plainly

demonstrate the presence of a leg injury (*see* Clark Decl., Ex. D (Dkt. 52, at 12-14)), and the

"Injury Report" apparently completed by Nurse Wolff on November 9 does not indicate any

signs of injury at all.  Rather, in the section of that report calling for a "description of [the]

injury," the handwritten notes appear to state:

> [Offender] reports pain to [right] thigh as indicated below
> [(diagram indicating area of complaint)] as well as [right] shoulder.
> Full active range of motion to neck and right knee, joint stable
> upon manipulation.  No discoloration, ecchymosis [(*i.e.*, sign of
> subcutaneous bleeding)], or asymmetry of alleged injured areas
> noted.

(*Id.*)[7]  As a general matter, Plaintiff claims insufficient information to admit or deny the

substance of Nurse Wolff's findings (*see* Pl. 56.1 Stmt. ¶¶ 12-13), admitting only that he was

examined and photographed (*see id*. ¶¶ 11, 14).  Plaintiff also does not dispute the fact that

Nurse Wolff's report documents that he received analgesic balm and ibuprofen.  (*See* Injury

Report; *see also* Pl. 56.1 Stmt. ¶ 14.)

On November 13, 2012, Plaintiff was again examined by Bentivegna.  (Def. 56.1 Stmt.

¶ 15.)  In his treatment notes regarding the examination, Bentivegna indicated that he had

observed "some mild swelling around the patella," as well as "possibly some mild ecchymosis of

[the] anterior thigh" (Progress Notes, entry dated Nov. 13, 2012 (Dkt. 52, at 17)), statements

Plaintiff concedes that Bentivegna made, although, as with the notations made in the nurses'

reports described above, Plaintiff denies information sufficient to admit "whether this was the

extent of Dr. Bentivegna's findings" (Pl. 56.1 Stmt. ¶ 15).   Plaintiff does not dispute that

---

[7] As with Nurse Miller's report, Bentivegna has not introduced any statement from
Nurse Wolff to confirm the contents of his handwritten notes, and thus the Court has relied on its
own best reading of the document.

Bentivegna ordered that X-rays be taken of Plaintiff's right knee and femur, and those X-rays were taken four days later, on November 17, 2012.  (Def. 56.1 Stmt. ¶ 16.)  The X-rays revealed no abnormalities.  (Clark Decl., Ex. E (X-Ray Requisition and Report, dated Nov. 19, 2012 (Dkt. 52, at 18)).)  Despite this, Plaintiff testified at his deposition that he "could barely walk" for nearly a month after the incident.  (Pl. Dep., at 42:14-16.)

Records show that, nearly a year later, on November 4, 2013 (although Plaintiff does not recall the date), Plaintiff underwent an MRI of his thoracic and lumbar spine.  (Clark Decl., Ex. E (report of Wyoming Valley Radiologists, dated Nov. 4, 2013 ("MRI Report") (Dkt. 52, at 19)); Def. 56.1 Stmt. ¶ 17; Pl. 56.1 Stmt. ¶ 17.)  The physicians who reviewed the MRI indicated that Plaintiff's thoracic and lumbar spine were "normal" (MRI Report), although Plaintiff states that he "lacks sufficient information to ascertain the truthfulness of this statement" (Pl. 56.1 Stmt. ¶ 18).  Regardless of the reported negative finding, Plaintiff was approved for and received physical therapy for his back.  (Def. 56.1 Stmt. ¶ 19.)

At his deposition, Plaintiff testified, with respect to his back, that he believed that he "ha[d] some type of nerve damage," as his "legs lock up, [and his] arms jump up for no reason," although he also testified that he had not been diagnosed with nerve damage by the medical professionals who treated him.  (Pl. Dep., at 43:11-23.)  In addition, when asked about other injuries he had suffered as a result of the alleged assault by the Corrections Officers, Plaintiff testified that he had also been experiencing "bleeding" (apparently rectally), which he characterized as "maybe internal bleeding."  (*Id.* at 49:7-12.)  He testified that, when he "got to [U]pstate [Correctional Facility]," he was told that this bleeding was from hemorrhoids, but when he then "g[o]t to Attica [Correctional Facility]," he was told it was from a fissure; he

6

further testified that, although he had been told that he would be given an additional

examination, he had not received that examination.  (*Id.* at 49:13-23.)

    **B.**    **Procedural History**

Plaintiff, acting *pro se*, filed his Complaint in this action on September 13, 2012 (*see*

Dkt. 2), along with a request to proceed *in forma pauperis* (*see* Dkt. 1), which was later granted

(*see* Dkt. 5).  Plaintiff amended the Complaint on December 17, 2013 (*see* Dkt. 15), and again on

July 28, 2014 (*see* 2d Am. Compl.; Dkt. 36).

On May 15, 2014, Plaintiff filed an application for the Court to request *pro bono* counsel

to represent him.  (Dkt. 32.)  On June 12, 2014, Plaintiff's application was granted to the extent

that the Clerk of Court was directed to seek *pro bono* counsel for Plaintiff for the limited purpose

of conducting discovery.  (*See* Dkt. 35.)  On September 15, 2014, Carlos Gonzalez, Esq.

("Gonzalez") entered a limited notice of appearance, for discovery purposes, on Plaintiff's

behalf.  (*See* Dkt. 42.)  Gonzalez represented Plaintiff throughout the discovery period, which

closed on January 30, 2015.  (*See* Dkt. 49.)

On February 6, 2015, Bentivegna timely filed the current motion for partial summary

judgment, seeking dismissal of the claim against him.  (Notice of Motion for Summary

Judgment, dated Feb. 6, 2015 (Dkt. 50); Memorandum of Law in Support of Defendant's Motion

for Partial Summary Judgment, dated Feb. 6, 2015 ("Def. Mem.") (Dkt. 51); Clark Decl.; Def.

56.1 Stmt.)  On March 20, 2015, this Court, having received no opposition from Plaintiff, issued

an Order directing Plaintiff either to file his opposition or to request an extension of time, no

later than April 1, 2015.  (*See* Dkt. 55 (Mem. Endors.).)  This Court then learned that Plaintiff

had been unaware of Bentivegna's motion, as the motion papers had been served on Gonzalez

(who continued to be listed on the docket as attorney for Plaintiff despite the close of discovery),

and Gonzalez apparently had not forwarded Bentivegna's motion papers to Plaintiff.  (*See* Dkt. 57.)  This Court extended Plaintiff's time to respond, *pro se*, to Bentivegna's motion (*see id.*), but, shortly thereafter, Gonzalez entered a general-purpose appearance on Plaintiff's behalf (*see* Dkt. 59; *see also* Letter to the Court from Plaintiff, dated Apr. 30, 2015 (Dkt. 60) ("Mr. Carlos Gonzalez has fully taken on my case as my lawyer and will answer to the summary judgment . . . .")).

Gonzalez, on Plaintiff's behalf, timely filed an opposition to Bentivegna's motion on June 1, 2015 (*see* Response to Motion for Summary Judgment, undated (Dkt. 62)), but, as a result of several deficiencies in that submission – including the failure to include a response to Bentivegna's Rule 56.1 Statement – this Court directed Gonzalez to file a supplemental submission, no later than June 19, 2015 (*see* Dkt. 63).  Gonzalez, though, did not make a further submission until June 30, 2015 (*see* Response to Defendant[']s Motion for Summary Judgment, undated ("Pl. Mem.") (Dkt. 65); Gonzalez Decl.), and this submission again failed to comply with Local Civil Rule 56.1.  This Court again extended Plaintiff's time to submit his Rule 56.1 Statement, and Plaintiff, through Gonzalez, filed his statement on July 8, 2015 (*see* Pl. 56.1 Stmt.).  Bentivegna, after requesting, and receiving, an extension of time (*see* Dkts. 71, 73), timely filed a reply on July 31, 2015 (Reply Memorandum of Law in Further Support of Defendant Bentivegna's Motion for Partial Summary Judgment, dated July 31, 2015 (Dkt. 74)). The contents of the parties' submissions are discussed below.

## DISCUSSION

I. **APPLICABLE LEGAL STANDARDS**

    A. **Summary Judgment**

        1. **Rule 56 Standards**

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental*, Inc., 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This burden may be satisfied "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex*, 477 U.S. at 325).

Once the movant meets this burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23). Specifically, the non-moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to any material fact. Fed. R. Civ. P. 56(c)(1). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Rather, a plaintiff opposing summary judgment "must lay bare his proof in evidentiary form and

raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (internal quotation marks and citations omitted); *see Smith v. Menifee*, No. 00cv2521 (DC), 2002 WL 461514, at *3 (S.D.N.Y. Mar. 25, 2002) (holding that the non-moving party must present "significant probative evidence tending to support the complaint" (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))).

In reviewing the evidentiary record, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his [or her] favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001). If, even viewed in this light, there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," or if the "evidence is not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## 2. Local Civil Rule 56.1

Under this Court's rules, a party moving for summary judgment must submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are generally deemed admitted as a matter of law. *See*

*Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.")

Local Civil Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law. *Id.* Thus, the court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement; it also must be satisfied that the moving party's assertions are supported by the record. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Holtz*, 258 F.3d at 74; *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 329 n.12 (S.D.N.Y. 2005). Furthermore, "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may, in its discretion, opt to conduct an assiduous review of the record" in determining whether a genuine dispute exists as to any material fact. *Holtz*, 258 F.3d at 73 (internal quotation marks and citations omitted).

## B.   Deliberate Indifference to a Prisoner's Serious Medical Need

"[T]he treatment [a prisoner] receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," as this constitutes "'the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Deliberate indifference to serious medical needs can be "manifested by prison doctors in their response to the prisoner's needs or

by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

To establish a violation of the Eighth Amendment based on deliberate indifference to serious medical needs, a prisoner must establish both "(1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with the 'unnecessary and wanton infliction of pain.'" *Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer*, 511 U.S. at 834). This standard "must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns." *Id.* at 163.

The first prong of this inquiry, or the "objective test," requires the "court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted). Where the unreasonable medical care alleged is a failure to provide treatment, "courts examine whether the inmate's medical condition is sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 785-86). In order to be considered "sufficiently serious," the prisoner generally must establish that he or she suffered from "a condition of urgency," *i.e.*, one that may produce death or degeneration, or that "extreme pain" exists. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted; citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (a serious medical condition exists where "the failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"). Although "there is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's

medical condition," courts, in evaluating whether a prisoner has satisfied the objective prong of
the deliberate-indifference test, have considered factors such as "(1) whether a reasonable doctor
or patient would perceive the medical need in question as 'important and worthy of comment or
treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the
existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)
(quoting *Chance*, 143 F.3d at 702 (2d Cir. 1998)).

The second prong, or the "subjective test," requires a showing that the defendant "[knew]
of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  A
defendant's knowledge of an excessive risk can be established through a showing that "the risk
was obvious or otherwise must have been known to a defendant." *Brock*, 315 F.3d at 164.  With
respect to disregard, a prisoner must establish that the defendant acted with, at minimum, a
reckless state of mind. *Farmer*, 511 U.S. at 839-40 ("Deliberate indifference is a mental state
equivalent to subjective recklessness, as the term is used in criminal law"); *Chance*, 143 F.3d at
703 ("negligence, even if it constitutes medical malpractice, does not, without more, engender a
constitutional claim" (citing *Estelle*, 429 U.S. at 105-06)).  "So long as the treatment given is
adequate, the fact that a prisoner might prefer a different treatment does not give rise to an
Eighth Amendment violation." *Chance*, 143 F.3d at 703 (a "mere disagreement over the proper
treatment does not give rise to a claim"); *see Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir.
2013) (citing *Chance*).

## C.    Qualified Immunity under 42 U.S.C. § 1983

Although 42 U.S.C. Section 1983 creates liability for a defendant who, under color of
state law, deprives a plaintiff of his or her civil rights, *see* 42 U.S.C. § 1983, qualified immunity
"protects government officials from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted; citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This doctrine "balances the need . . . to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

The defendant bears the burden of establishing his or her entitlement to qualified immunity, as it is an affirmative defense.  *Palmer v. Richards*, 364 F.3d 60, 67 (2d Cir. 2004) (citing *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000)); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 134 (2d Cir. 2013).  When a defendant invokes qualified immunity at the summary judgment stage, "a court must consider two questions:  (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citations omitted).  The court may exercise its discretion as to which of the two prongs of this analysis it addresses first. *Pearson*, 555 U.S. at 236; *accord Hilton v. Wright*, 673 F.3d 120, 126-27 (2d Cir. 2012).

## II.   **BENTIVEGNA'S MOTION**

In his motion for summary judgment, Bentivegna argues that Plaintiff could not succeed at trial on his deliberate-indifference claim, both because Plaintiff's claimed injuries, even as alleged, were not sufficiently serious to support his claim, and because there is no evidence to suggest that Bentivegna acted with the requisite mental state as to those injuries.  (Def. Mem., at 5-9.)  Bentivegna also argues that he is entitled to qualified immunity on Plaintiff's claim.  (*Id.* at 9-10.)  Although the specifics of Plaintiff's arguments in opposition are not entirely clear, he

generally argues that summary judgment is not warranted because Bentivegna's "lack of treatment [of Plaintiff] was the direct and proximate cause for a prolonged and delayed period of pain for Plaintiff" (Pl. Mem., at 8), and further argues that that Bentivegna has not met his burden of establishing his entitlement to qualified immunity (*id.* at 6-7).  This Court addresses the parties' arguments in turn.

<strong>A.      Challenge to the Merits of Plaintiff's Deliberate-Indifference Claim</strong>

<strong>1.      Seriousness of Plaintiff's Injuries</strong>

Bentivegna first argues that summary judgment should be granted in his favor because the record contains insufficient evidence to raise a material factual dispute as to the seriousness of Plaintiff's claimed injury; according to Bentivegna, Plaintiff, by his own allegations, suffered "nothing more than bruising and swelling for which deficiencies in medical treatment are not enough to constitute a serious injury under the Eighth Amendment."  (Def. Mem., at 6 (legal citations omitted).)  In further support of his argument regarding the lack of seriousness of Plaintiff's injuries, Bentivegna points to his own observations (as recorded in his treatment notes), as well as the reports of Nurses Miller and Wolff and the negative X-ray findings.  (*See id.*)  In response, Plaintiff appears to argue that, as the core of his claim against Bentivegna is a challenge to the adequacy of the medical attention he received, Bentivegna should not be permitted to rely on the records pertaining to that medical attention to show that Plaintiff's injuries were not severe enough to require additional care.  (*See* Pl. Mem., at 7.)

With regard to the medical records, while contemporaneous indicators of Plaintiff's condition, including the observations reflected in the records submitted to the Court by Bentivegna, would certainly be probative as to the nature and extent of Plaintiff's injuries, the Court notes (although Plaintiff has not raised this point) that any such statements would

15

constitute hearsay, and, while those statements might well be admissible at trial under an

exception to the hearsay rule, *see* Fed. R. Evid. 803, Bentivegna has not demonstrated, on this

motion, that they are in admissible form, such that it would be appropriate for the Court to

consider their contents here, *see* Fed. R. Civ. P. 56(c); *see also Tutora v. Corr. Med. Care, Inc.*,

No. 10cv0207 (MAD) (TWD), 2012 WL 1898871, at *2 (N.D.N.Y. Apr. 30, 2012) ("Here, the

[prison medical] records [submitted by the defendants] are not supported by any custodial

affidavit and have not been certified.  [They] are not admissible and I have not considered

them"), *report and recommendation adopted by* 2012 WL 1898915 (May 23, 2012).  The Court

is especially wary of relying on the two nurses' supposed statements at this stage, not only

because the statements are handwritten, contain shorthand abbreviations, and are not entirely

clear, but because the record contains no confirmation that the statements are even attributable to

these witnesses.  Moreover, the Court notes that, while the medical records may suggest that, at

most, Plaintiff suffered from mild swelling and bruising, Plaintiff himself testified under oath, at

his deposition, that he suffered from severe bruising and swelling, accompanied by significant

pain, rendering him "barely able to walk" for nearly a month.  (*See* Pl. Dep., at 38:12-13,

42:14-16.[8])  At the summary judgment stage, Plaintiff is entitled to have the Court draw every

favorable inference from this testimony.

        Nonetheless, even absent the medical records, and even if Plaintiff's testimony were fully

credited by a jury, Bentivegna is correct that this would likely be inadequate, as a matter of law,

---

        [8] In his statement pursuant to Local Civil Rule 56.1, Plaintiff has not put forth any
affirmative facts regarding the extent of his alleged injury (*see generally* Pl. 56.1 Stmt.), and the
Court is "not required to consider" what Plaintiff has "fail[ed] to point out," *Holtz*, 258 F.3d
at 73.  Despite this, this Court has opted, in its discretion, "to conduct an assiduous review of the
record," *id.*, and, in connection with that review, this Court has reviewed the portions of
Plaintiff's deposition that are before it, in order to identify testimony that supports Plaintiff's
claim.

to show that Plaintiff's injury was "sufficiently serious" for the alleged denial of treatment to constitute a potential Eighth Amendment violation. Even if his leg showed substantial bruising and swelling, Plaintiff still appears to claim a soft-tissue injury, and analogous case law regarding similar injuries shows that, even when fairly significant, such injuries are generally not considered to create a condition of urgency or pain sufficient to render a lack of treatment constitutionally suspect. *See, e.g.*, *Rodriguez v. Mercado*, No. 00cv8588 (JSR) (FM), 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (bruises to head, back, and wrists insufficient to meet objective prong where "[d]espite the suggestion that [the plaintiff] was kneed in the back and had his head struck against the wall . . . [he] has not adduced any evidence to suggest that any of his injuries . . . were so urgent or life-threatening that they required immediate care"); *Chatin v. Artuz*, No. 95cv7994 (KTD), 1999 WL 587885, at *1 (S.D.N.Y. Aug. 4, 1999) (pain and soft-tissue swelling of the foot did not meet objective prong of deliberate-indifference test), *aff'd*, 28 F. App'x 9 (2d Cir. 2001); *Stephanski v. Arnone*, No. 04cv552A, 2008 WL 413301, at *8 (W.D.N.Y. Feb. 13, 2008) (bruising and pain, allegedly caused by assault by corrections officers in prison cell, were not sufficiently serious to meet objective prong).

The Court need not decide, however, whether, in this particular case, Plaintiff's self-described injuries could be sufficient to satisfy the objective prong of the deliberate-indifference inquiry, as, in any event, Plaintiff has not shown that any genuine issue of material fact exists as to whether Bentivegna acted with the mental state required to find an Eighth Amendment violation.

### 2.     <u>Bentivegna's State of Mind</u>

As set out above, for Plaintiff to be able to satisfy the subjective prong of the deliberate-indifference test, he would have to be able to establish at trial that Bentigna "[knew] of and

disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Bentivegna argues that Plaintiff cannot meet this burden, given that the undisputed evidence demonstrates that he in fact received medical care for his claimed injuries.  (Def. Mem., at 7-9.) In opposition, Plaintiff appears to argue that Bentivegna's treatment of his injuries was so minimal as to constitute a "lack of treatment" (Pl. Mem., at 8); that any medical attention Plaintiff received from Nurses Miller and Wolff was also inadequate, as they were nurses, not doctors (*id.* at 9); and that a grant of summary judgment in Bentivegna's favor would be inappropriate as "all evidence of any potential wrong doing is in the possession of Defendants" (*id.* at 8).

Here, Bentivegna plainly has the better of the arguments.  Plaintiff's own testimony and Rule 56.1 Statement acknowledge that he received medical attention shortly after his injuries were allegedly sustained, and that he received follow-up care and treatment over the course of the next several days.  In this regard, Plaintiff does not dispute that, upon his arrival at the SHU on the same day as he sustained his alleged injuries, Nurse Miller asked him whether he required any medical treatment and that it was determined that follow-up with a physician would be appropriate.  (*See* Pl. 56.1 Stmt. ¶¶ 3, 6.)  Plaintiff has also confirmed through his testimony that he received such follow-up, conceding that, the next morning, Bentivegna visited him in his cell, and that, after Plaintiff showed Bentivegna his leg and complained of back pain, Bentivegna provided Plaintiff with analgesic balm and ibuprofen.  (*See* Pl. Dep., at 38:25-39:3; *see also* Pl. 56.1 Stmt. ¶¶ 7-8.)  Plaintiff also does not dispute that, two days after that,[9] he was examined by Nurse Wolff; that, four days later, he was again examined by Bentivegna, who ordered that X-rays be taken; and that the X-rays were in fact taken shortly thereafter, with no positive

---

[9] *See* n.6, *supra*.

findings reported.  (*See* Pl. 56.1 Stmt. ¶¶ 11, 15, 16; Pl. Dep., at 41:13-17, 42:2-5.)  Thus, there is no dispute here that, within a relatively short span of time from when he sustained his injuries, Plaintiff was seen by at least three medical professionals and was afforded treatment.  Plaintiff also does not dispute the nature of the treatment he received from these healthcare providers.

Instead, Plaintiff appears to take issue with the level of medical care that was provided to him.  (*See* Pl. Mem., at 9 (contending that Nurses Miller and Wolff erred in their medical assessments); Pl. Dep., at 41:6-8 (Plaintiff testifying that, when Bentivegna visited him in his cell, Bentivegna "interviewed" him, but "never checked [him] out"); *id.* at 39:2-3 (Plaintiff testifying that, when he showed Bentivegna his leg, Bentivegna only told him that "it w[ould] heal," and gave him "anesthetic balm, some type of muscular pain remover").)  Even if Bentivegna had acted negligently, though, this would be insufficient to establish that Bentivegna acted with deliberate indifference, and courts have found that treatment similar to that which Plaintiff concedes was administered here is sufficient to pass muster under the Eighth Amendment.  *See Estelle*, 429 U.S. at 107-08 (prison doctors who prescribed muscle relaxants and pain relievers and suggested bed rest were not deliberately indifferent to a prisoner's lower back sprain); *Linden v. Westchester County*, 93cv8373 (MBM), 1995 WL 686742, at *3 (S.D.N.Y. Nov. 20, 1995) (allegations in complaint insufficient to plead Eighth Amendment violation where complaint alleged that defendants "denied plaintiff a clinic visit for approximately eight hours, had a nurse rather than a physician attend to [him], ignored [his] pleas to be admitted to a hospital, and administered only pain pills to relieve plaintiff's suffering").  Plaintiff's apparent argument that he was entitled to examination and treatment by a physician, rather than by nurses (*see* Pl. Mem., at 8-9) is unsupported by any legal authority; in any event, Plaintiff concedes that he was seen by Bentivegna the day after the alleged injuries

were sustained, and there is no evidence that this short delay exposed Plaintiff to any excessive risk.[10]

      While Plaintiff apparently contends that Bentivegna's treatment records are insufficient to support his motion, Bentivegna has done enough – even just by pointing to Plaintiff's own admissions – to satisfy his initial burden, on summary judgment, of showing that he did afford medical care to Plaintiff. *See Hunt*, 927 F.2d at 710. The question then is whether, on the subjective prong of the deliberate-indifference standard, Plaintiff has come forward with "admissible evidence sufficient to raise a genuine issue of fact for trial" as to the constitutional adequacy of that care. *Jaramillo*, 536 F.3d at 145. To carry this burden, Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation," *Scott*, 143 F.3d at 114, but rather must "lay bare his proof in evidentiary form." *Weiss*, 293 F. Supp. 2d at 408. Even assuming, *arguendo*, that Plaintiff has raised some doubt as to the accuracy of the assessments reflected in his treatment records, he has not pointed to *any* evidence as to Bentivegna's mental state – that is, Plaintiff has pointed to no evidence upon which a jury could conclude that Bentivegna in fact knew of and disregarded any excessive medical risk faced by Plaintiff.

      This is not a case where, for example, the record reflects that Bentivegna "failed to recommend or carry out a course of treatment that was plainly required." *Abney v. McGinnis*, No. 01cv8444 (SAS), 2007 WL 844675, at *3 (S.D.N.Y. Mar. 16, 2007) (citing, *inter alia*, *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) (failure to inform a prisoner of two broken pins in his hip that needed to be removed surgically could support a claim for deliberate

---

     [10] In addition, Plaintiff points to no evidence upon which a jury might conclude that Bentivegna played any role in determining whether Plaintiff would first be attended to by nurses, and it is therefore unclear how the fact that Plaintiff was first seen by nurses bears upon Bentivegna's mental state, and, as a result, upon Bentivegna's liability here.

indifference) and *Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974) (failure to attempt to reattach a prisoner's ear could support a claim for deliberate indifference)).  Nor does Plaintiff point to any medical evidence that, after receiving inadequate treatment (or after a delay in treatment), Plaintiff's condition worsened demonstrably, from which a reasonable juror might infer that a risk was present and had been disregarded.  *See, e.g.*, *Chance*, 143 F.3d at 703; *Felix v. Simon*, No. 10cv6023 (SJF) (LB), 2004 WL 5739416, at *7 (E.D.N.Y. Jan. 4, 2004), *aff'd on other grounds*, 303 F. App'x 21 (2d Cir. 2008).  Indeed, the MRI of Plaintiff's back, taken nearly a year after the incident, revealed no abnormalities, and, to the extent that Plaintiff contends that he now suffers from "nerve damage" and "internal bleeding" as a result of the alleged assault, these assertions are unsupported by medical evidence and amount to nothing more than Plaintiff's own speculation as to cause and diagnosis.

Similarly, Plaintiff's argument that "all evidence" with respect to Plaintiff's deliberate indifference is within Defendants' control is unavailing.  Although Rule 56(d) of the Federal Rules of Civil Procedure provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may, *inter alia*, defer consideration of the motion or allow for additional discovery to be taken, Fed. R. Civ. P. 56(d), Plaintiff has neither specified what evidence he contends is unavailable to him, nor explained why he was unable to obtain such evidence during the discovery period.  This Court also notes that Plaintiff was represented by current counsel during the discovery process, and that counsel raised no disputes regarding the adequacy of Defendants' disclosures at that time.  Plaintiff's suggestion that additional evidence may exist that would allow him to establish Bentivegna's deliberate indifference appears to be no more than "unsubstantiated speculation,"

and, as such, does not suffice to create a genuine issue of material fact.  *See Scott*, 143 F.3d at 114.

As Plaintiff has not demonstrated that any genuine issue of material fact exists as to whether Bentivegna acted with the recklessness or deliberate disregard required to make out an Eighth Amendment violation, Bentivegna is entitled to summary judgment in his favor on Plaintiff's claim against him.

### B.   Qualified Immunity

Where a defendant asserts a qualified immunity defense on summary judgment, the court must assess "whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right," and, if so, "whether that right was clearly established at the time of the alleged violation."  *Tracy*, 623 F.3d at 96.  In his summary judgment motion, Bentivegna argues that he is entitled to qualified immunity because his "actions were objectively reasonable," and because "there is no clearly established law indicating that seeing an inmate repeatedly and offering pain medication is insufficient medical treatment for these type[s] of injuries."  (Def. Mem., at 10.)  In opposition, Plaintiff appears to argue (although, again, Plaintiff's position is not entirely clear), that the reasonableness of Bentivegna's conduct should not be assessed based on Bentivegna's own evaluation of Plaintiff's injuries, as Bentivegna's evaluation (and treatment) of Plaintiff's injuries is what is at issue in this case.  (Pl. Mem., at 6-7.[11])

---

[11] Plaintiff also argues that Bentivegna "notes a subjective portion to the qualified immunity test, yet ignores the precedent set by *Harlow v. Fitzgerald* [457 U.S. 800 (1982)] in abolishing this test."  (Pl. Mem., at 7.)  Although Plaintiff is correct that *Harlow* "defin[ed] the limits of qualified immunity essentially in objective terms," *Harlow*, 457 U.S. at 819, his contention that Bentivegna "notes a subjective portion to the qualified immunity test" is incorrect.

As discussed in the previous section, Plaintiff has failed to demonstrate the existence of a genuine issue of material fact on his claim that Bentivegna violated his Eighth Amendment rights. For the same reasons, it cannot be said that "the evidence, viewed in the light most favorable to the plaintiff," is capable of "mak[ing] out a violation of a statutory or constitutional right." *Tracy*, 623 F.3d at 96. Bentivegna is thus entitled to qualified immunity on Plaintiff's claim against him. *See, e.g., Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (determining that defendants were entitled to qualified immunity because a reasonable jury could not find in plaintiff's favor as to one of the prongs of the analysis).

## CONCLUSION

For all of the foregoing reasons, I recommend that the motion of defendant Bentivegna for partial summary judgment (Dkt. 50) be granted, and that Plaintiff's claim against this defendant be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States Courthouse, 500 Pearl Street, Room 1350, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054

(2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
       August 25, 2015

                           Respectfully submitted,

                           DEBRA FREEMAN
                           United States Magistrate Judge

Copies to:

Hon. Paul A. Crotty, U.S.D.J.

All counsel (via ECF)